IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JOZEY JEZEK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-01102-O |
| | § | |
| R.E. GARRISON TRUCKING, INC., and | § | |
| STEVEN CRAIG HARE, | § | |
| | § | |
| Defendants. | § | |

**OPINION & ORDER**

This is a car crash case involving a tractor-trailer owned and operated by Defendants that rear-ended a pickup truck driven by Plaintiff. On July 11, 2022, Defendants filed a Motion for Partial Summary Judgment (ECF No. 62) on Plaintiff's negligence and negligence per se claims against Defendant R.E. Garrison Trucking, Inc., Plaintiff's negligence per se claim against Defendant Steven Craig Hare, and the exemplary damages Plaintiff seeks from both Defendants.[1] In Plaintiff's Response, Plaintiff abandoned his negligence per se claims against both Defendants, while defending all his other claims.[2] In their Reply, Defendants included a Motion to Strike the Declaration of Plaintiff's Retained Expert Billy Weaver, in addition to offering further argumentation in support of their Motion for Partial Summary Judgment.[3] Defendants' Motion for Partial Summary Judgment is now ripe for review.

Having reviewed the briefing, summary judgment evidence, and applicable case law, the Court finds that Defendants' Motion for Summary Judgment (ECF No. 62) should be, and is

---

[1] Defs.' Br. in Supp. of Mot. for Partial Summ. J. 2, ECF No. 78.
[2] Pl.'s Resp. Br. 1–3, ECF No. 73.
[3] Defs.' Reply Br. 9–10, ECF No. 79.

1

hereby, **DENIED**. The Court's decision to deny Defendants' Motion for Partial Summary Judgment does not rest on the Declaration of Billy Weaver, so the Court finds that Defendants' Motion to Strike his declaration is **MOOT**.[4] The Court's reasoning is explaining below.

## I. BACKGROUND[5]

### A. Steven Craig Hare's Employment with R.E. Garrison Trucking, Inc.

Defendant Steven Craig Hare is a commercial truck driver who was hired by Defendant R.E. Garrison Trucking in January 2020. Prior to his employment with Defendant Garrison, Defendant Hare worked for various other trucking companies over the previous decade. The quality of his driving for those previous employers is disputed. It is also disputed as to whether Defendant Garrison properly investigated Defendant Hare's prior employment history.

Upon starting his employment with Defendant Garrison, Defendant Hare attended Defendant Garrison's orientation program for newly hired drivers which included PowerPoint presentations on safe driving and signed agreements certifying acknowledgement of safe driving practices. The parties dispute whether Defendant Garrison hired Defendant Hare pursuant to yellow flags which necessitated additional training and additional supervision beyond the basic training given to all newly hired drivers. Defendant Hare was hired subject to a year-long probationary period. The parties dispute the significance of the length of this probationary period.

As part of its standard practices, Defendant Garrison installs a SmartDrive monitoring system in all its trucks that records potentially unsafe driving incidents and sends those recordings in reports to Defendant Garrison. For the first nine months of Defendant Hare's employment with

---

[4] The Court's decision to moot this particular Motion to Strike is independent of the currently pending Motion to Strike (ECF No. 96) regarding Billy Weaver's proposed expert testimony at trial.
[5] Unless otherwise specified, the Court's recounting of the facts in this case is drawn from briefing submitted by the parties. *See generally* Defs.' Br. in Supp. of Mot. for Partial Summ. J., ECF No. 78; Pl.'s Resp. Br., ECF No. 73; Defs.' Reply Br., ECF No. 79.

Defendant Garrison, there are no reported SmartDrive incidents in the record. The parties dispute whether this means Defendant Hare committed no infractions during that period, or if that means the data for that period has been deleted and is unavailable. Between October 2020 and the January 2021 accident, Defendant Hare triggered several SmartDrive alerts, including four instances of unsafe following and one near collision. Defendant Hare was not coached or given remedial training in response to these incidents.

In January 2021, Defendant Hare completed his year of probation with Defendant Garrison. Eight days later, the crash at issue in this lawsuit occurred.

**B.    The Accident**

On the night of January 29, 2021, Defendant Hare was driving his 18-wheel tractor-trailer through a construction zone and crashed into the back of Plaintiff Jozey Jezek's Ford F-150. Virtually all other facts surrounding the crash are disputed. The distance between Plaintiff's and Defendant's vehicles in the moments preceding the crash is disputed. Defendant's speed at the time of the crash is disputed. Plaintiff's braking as a potential contributing factor to the crash is disputed. The direction of Defendant Hare's attention at the time of the crash is disputed. Whether Defendant Hare was braking or accelerating at the point of impact is disputed. There is video evidence of the crash, but it does not definitely resolve these disputed facts.[6]

**II.    LEGAL STANDARDS**

Summary judgment is appropriate only where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, which are designed 'to secure the just,

---

[6] Event Recorder Footage, Defs.' Am. App. 276, ECF No. 77.

speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting FED. R. CIV. P. 1). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he substantive law will identify which facts are material." *Id.* The movant must inform the court of the basis for its motion and identify the portions of the record that reveal there are no genuine disputes of material fact. *Celotex*, 477 U.S. at 323.

The court must view the evidence in the light most favorable to the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). "Moreover, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Id.* And if there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion for summary judgment. *Anderson*, 477 U.S. at 250. "[Y]et the nonmovant may not rely on mere allegations in the pleadings; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002) (cleaned up). "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Id.*

### III.  ANALYSIS

Plaintiff brings claims for both gross negligence and ordinary negligence against Defendants.[7] Plaintiff's claims of gross negligence against both Defendants are at issue here. Furthermore, Plaintiff's claims of ordinary negligence are also at issue, but only with respect to Defendant Garrison.

---

[7] Pl.'s Orig. Pet. 6–11, ECF No. 1-2.

The Court first addresses Plaintiff's gross negligence claims against both Defendants and finds that a reasonable jury could return a verdict for Plaintiff on these claims based on the evidence presented in the summary judgment record. Having made this determination and based on the same available evidence, the Court also finds that a reasonable jury could return a verdict for Plaintiff on his ordinary negligence claims against Defendant Garrison.

**A.     Exemplary Damages Against Defendants**

"[E]xemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from . . . gross negligence." Tex. Civ. Prac. & Rem. Code § 41.003(a). Gross negligence is defined as "an act or omission: (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others." Tex. Civ. Prac. & Rem. Code § 41.001(11).

Importantly, the Texas Supreme Court has recognized that "no exact line can be drawn between negligence and gross negligence." *Wal-Mart Stores v. Alexander*, 868 S.W.2d 322, 326 (Tex. 1993). The primary difference between gross and ordinary negligence is the mental state of the defendant – conscious indifference – which justifies the imposition of exemplary damages for gross negligence. *See McDorman ex rel. Connelly v. Texas-Cola Leasing Co.*, 288 F.Supp.2d 796, 808–10 (N.D. Tex. 2003). Otherwise stated, "[t]he plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrated that he did not care." *Id.* at 810.

### 1. Defendant Hare's Gross Negligence

A recent case arising out of the U.S. District Court for the Western District of Texas helpfully summarized Texas law with respect to gross negligence of tractor-trailer drivers as follows:

> Texas courts have repeatedly made clear that whether a driver is operating a car or truck, acts that support a finding of ordinary negligence, such as a party's failure to obey traffic laws, will not support a finding of gross negligence. *Phillips v. Super Services Holdings, LLC*, 189 F. Supp. 3d 640, 656 (S.D. Tex. 2016) (collecting Texas cases). It is well established that "[a] driver's actions must be considerably more extreme, often involving multiple conscious acts or omissions, to support liability." *Sanchez v. Swift Transportation Co. of Arizona, LLC*, No. 4:15CV15-LG, 2017 WL 5640834, at *2 (W.D. Tex. May 30, 2017) (citing *Perez Librado v. M.S. Carriers, Inc.*, No. Civ. A. 3:02-CV-2095-D, 2004 WL 1490304, at *3 (N.D. Tex. 2004); *Rayner v. Dillon*, 501 S.W.3d 143, 153 (Tex. App. 2016)). "An act or omission that is merely ineffective, thoughtless, careless, or not inordinately risky is not grossly negligent." *Id.* (quoting *Oney v. Crist*, No. 12-16-00045-CV, 2017 WL 1016518, at *6 (Tex. App. Mar. 15, 2017)).

*DeHaven v. Singh*, No. 1:20-CV-977-RP, 2022 WL 1793523, at *2 (W.D. Tex. Mar. 21, 2022). But while *DeHaven*, and many of the other cases cited by Defendants in their briefing, offer insight into the high bar of gross negligence and the kind of factors that courts consider when assessing allegations of gross negligence, those cases are all highly fact intensive and none of them offer bright line rules.[8]

Turning to the facts here, Defendant Hare indisputably crashed into the back of Plaintiff's Ford F-150 while driving his tractor-trailer at night amidst stop-and-go traffic in a construction zone.[9] Plaintiff alleges that Defendant Hare was following too close behind Plaintiff's F-150 and that he was driving at an unsafe speed.[10] Plaintiff further alleges that Defendant Hare accelerated into stop-and-go traffic without looking where he was going and that he accelerated into Plaintiff's

---

[8] *See, e.g.*, Defs.' Br. in Supp. of Mot. for Partial Summ. J. 38–44, ECF No. 78.
[9] *Id.* at 7–10.
[10] Pl.'s Resp. Br. 11–16, ECF No. 73.

F-150 without braking.[11] Plaintiff's allegations are supported by, among other sources, Defendant Hare's own deposition.[12] Moreover, the video of the traffic accident does not obviously refute Plaintiff's allegations.[13]

To be sure, Defendants offer their own evidence to contradict Plaintiff's allegations.[14] But at this stage, the Court "may not make credibility determinations or weigh the evidence." *Ion*, 731 F.3d at 389. Rather, the Court must "draw all reasonable inferences in favor of the nonmoving party." *Id*. Accordingly, the Court concludes that Plaintiff has pointed to evidence of specific aggravating factors which elevate the accident in this case above the kind of "garden-variety collision" that would preclude a gross negligence claim. *Marr v. Croxton*, No. SA-21-CV-00961-XR, 2022 WL 2346622, at *3 (W.D. Tex. June 29, 2022). Therefore, since a reasonable jury could accept Plaintiff's evidence and return a verdict of gross negligence against Defendant Hare, the Court must allow Plaintiff's gross negligence claim against Defendant Hare to proceed to trial.

### 2.   Defendant Garrison's Gross Negligence

In the trucking accident context, injured motorists defending against motions for summary judgment must supply rebuttal evidence sufficient to establish that 1) the actions of the involved trucking firm created an extreme risk of harm, and that 2) the firm was also consciously indifferent to such extreme risk. *Ewing v. Iron Tiger Logistics, Inc.*, No. 3:10-CV-1211-O, 2011 WL 13229253, at *2 (N.D. Tex. Apr. 5, 2011); *Phillips*, 189 F. Supp. 3d at 658. In short, at the summary judgment stage, an injured motorist must establish that a reasonable jury could find that the trucking firm both knew of the risk-of-harm which qualified as "extreme," and that trucking firm

---

[11] *Id*. at 33–35.
[12] *Id*.
[13] Event Recorder Footage, Defs.' Am. App. 276, ECF No. 77.
[14] *See generally* Defs.' Br. in Supp. of Mot. for Partial Summ. J., ECF No. 78.

also did not care. *Phillips*, 189 F. Supp. 3d at 658; *Escalante v. Creekside Logistics, LLC*, No. 5:18-CV-116-OLG, 2019 WL 9135758, at *6 (W.D. Tex. Feb. 12, 2019).

The parties have each offered copious case law about what kind of conduct on the part of a trucking company qualifies as grossly negligent. As for conduct that does not rise to the level of gross negligence, case law identifies the following:

- Proof of two moving violations or accidents within a two-year period prior to the accident is probably insufficient to establish incompetency or recklessness. *Broesche v. Bullock*, 427 S.W.2d 89, 93 (Tex. Civ. App. 1968).

- A driver's two speeding tickets in the three years prior to hire are insufficient to establish gross negligence. *Olivarez v. Get Cargo, Inc.*, 2014 WL 12588337, at *3 (W.D. Tex. Sept. 25, 2014), *report and recommendation adopted sub nom. Olivarez v. Bozhinov*, No. SA-13-CA-391-OLG, 2014 WL 12588338 (W.D. Tex. Oct. 21, 2014).

- One ticket and one "minor fender-bender" in a two-year period are insufficient to establish gross negligence. *Baird v. Shagdarsuren*, No. 3:17-CV-2000-B, 2020 WL 208815, at *5 (N.D. Tex. Jan. 14, 2020).

- Two speeding tickets are insufficient to demonstrate a driver's incompetence. *Phillips v. Super Servs. Holdings, LLC*, 189 F. Supp. 3d 640, 653 (S.D. Tex. 2016).

- A rear-end collision, a speeding ticket, and a driving-without-insurance citation over a three-year period was insufficient to establish gross negligence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 758 (Tex. 2007).

And as for conduct that does rise to the level of gross negligence, the case law reveals the following:

- Seven citations for traffic moving violations, one warning letter, and numerous disciplinary actions and restrictions within a span of three years are sufficient to establish recklessness or incompetence. *Broesche*, 427 S.W.2d at 93.

- Three intoxicated driving incidents and two collisions, including one collision in a two-year period preceding the accident, are sufficient to raise a fact issue as to the driver's recklessness or incompetence. *Pesina v. Hudson*, 132 S.W.3d 133, 139 (Tex. App. 2004).

- A reasonable jury could find that the failure to provide extra supervision and training for four "run time" violations in 1995, 1997, 2001 and 2006, which were possibly related to a subsequent collision, constituted gross negligence. *Partida Aranda v. YRC Inc.*, No. 3:18-CV-0494-D, 2019 WL 2357528, at *6 (N.D. Tex. June 4, 2019).

Among this morass of case law, Defendants contend that Plaintiff's gross negligence claims against Defendant Garrison fall squarely into the former collection of invalid gross negligence claims, rather than the latter collection of valid gross negligence claims.[15] But the Court does not think the matter is so clear.

During the year between his hiring and the day of the crash, the parties agree that the only training Defendant Hare received from Defendant Garrison was the standard onboarding curriculum that each of their drivers experience.[16] Plaintiff alleges that Defendant Garrison hired Defendant Hare subject to "yellow flags" due to Defendant Hare's previous speeding and following-too-closely violations with a previous employer.[17] Plaintiff further alleges that Defendant Garrison responded to these "yellow flags" by instituting a year-long probation period for Defendant Hare – four times longer than their normal probation period – and by planning to

---

[15] Defs.' Br. in Supp. of Mot. for Partial Summ. J. 25–38, ECF No. 78.
[16] *Id.* at 12–13.
[17] Pl.'s Resp. Br. 4–6, ECF No. 73.

provide Defendant Hare "additional training" and "additional attention."[18] But Defendant Hare received no training of any kind beyond the previously mentioned standard onboarding materials.[19] Moreover, according to Plaintiff, Defendant Garrison did not properly investigate Defendant Hare's previous employment history to find evidence of other "yellow flags."[20]

And even when Defendant Hare's SmartDrive monitoring system triggered four alerts for unsafe following and one for a near collision in the months preceding his crash with Plaintiff, Defendant Hare received no coaching sessions or remedial training from Defendant Garrison.[21] In fact, Plaintiff contends that any one of Defendant Hare's five violations preceding his crash could have been a terminable offense since they occurred during his probation period, but Defendant Garrison took no action of any kind in response to them.[22] Also, as proof of the feasibility of remedial measures, Plaintiff introduces evidence that Defendant Garrison did assign extra safety videos for Defendant Hare to watch in response to a subsequent unsafe following event a month after the crash, even though that unsafe following incident was scored as less severe than the previous five comparable violations before the crash.[23]

Overall, the contested facts offered by Plaintiff indicate that the circumstances of Defendant Garrison's employment of Defendant Hare fall somewhere among the previously cited case law. Depending on what evidence they believe to be persuasive, a reasonable jury could find that Defendant Garrison's practices were grossly negligent, just as they could find those same practices ordinarily negligent or not negligent at all. Because of the live disputes over the existence

---

[18] *Id*.
[19] *Id*. at 7–10.
[20] *Id*. at 6–7.
[21] *Id*.
[22] *Id*.
[23] *Id*.

and appropriate weight of material facts, summary judgment in favor of Defendant Garrison on Plaintiff's gross negligence claims would be improper, and it must be denied.

*   *   *

While the Court offers no opinion on whether Plaintiff will successfully establish gross negligence by clear and convincing evidence at trial, it does not need to do so here. Rather, the Court simply finds that the existing summary judgment evidence is disputed on many material facts. And if those facts were resolved in favor of Plaintiff, then a reasonable jury could return a finding of gross negligence against both Defendants. Therefore, Defendants' attempt to seek summary judgment on Plaintiff's gross negligence claims must be denied.

**B.     Ordinary Negligence Claims Against Defendant Garrison**

As the Court has already found, a jury could weigh the disputed evidence against Defendant Garrison and return of verdict of gross negligence against it. A finding of gross negligence on any of Plaintiff's claims would require predicate, individualized, and affirmative findings on the elements of ordinary negligence for that claim. *See, e.g.*, *Hall v. Stephenson*, 919 S.W.2d 454, 467 (Tex. App. 1996) ("A plaintiff who cannot support a negligence cause of action cannot succeed on gross negligence because a finding of ordinary negligence is a prerequisite to a finding of gross negligence.") Accordingly, for the reasons stated above, a jury could return findings of ordinary negligence against Defendant Garrison.

To be sure, the Court's conclusions about the *possibility* of gross negligence in this case do not *guarantee* the existence of ordinary negligence at trial. Indeed, a jury could coherently return findings of gross negligence on some of Plaintiff's claims, ordinary negligence on others, and no fault on the remaining claims. But for purposes of summary judgment, a finding that a

defendant could be liable for gross negligence necessarily includes a finding that the same defendant could be liable for ordinary negligence.

Moreover, Defendants' arguments against Plaintiff's negligence and gross negligence claims significantly overlap. Defendant Garrison's arguments against Plaintiff's negligence claims could be summarized as follows: Plaintiff's evidence is insufficient to overcome the high bar of negligence for trucking companies established by Texas law.[24] While that legal theory may indeed persuade a jury at trial, it is inapposite at the summary judgment stage. Weighing the sufficiency of disputed evidence is precisely the kind of balancing that this Court cannot engage in while resolving Defendants' motion. *See, e.g.*, *Anderson*, 477 U.S. at 250. And absent a weighing analysis, the Court cannot conclude that Plaintiff's evidence is facially insufficient to a degree of legal certainty that would entitle Defendant Garrison to judgment as a matter of law.

## IV.   CONCLUSION

There are genuine disputes of material fact on all the claims for which Defendants seek summary judgment. Therefore, Defendant's Motion for Partial Summary Judgment (ECF No. 62), must be, and is hereby, **DENIED**. The Court's decision to deny Defendants' Motion for Partial Summary Judgment does not rest on the Declaration of Billy Weaver, so the Court finds that Defendants' Motion to Strike his declaration is **MOOT.**

**SIGNED** on this **28th day** of **October, 2022**.

Reed O'Connor
UNITED STATES DISTRICT JUDGE

---

[24] *See generally* Defs.' Br. in Supp. of Mot. for Partial Summ. J., ECF No. 78; Defs.' Reply Br., ECF No. 79.